Good afternoon. Illinois Appellate Court First District Court is now in session. The Sixth Division, the Honorable Justice Mary K. Rochford presiding, case number 23-0072, American Aviation Supply v. Illinois Department of Revenue. Good afternoon, everyone. On behalf of myself and Justice Hoffman and Justice Ocasio, I apologize for our technical difficulties this morning. And thank you for agreeing to come back to us today at noon. And so we are ready to proceed now. We will allow each side to have 20 minutes and five minutes for rebuttal for the appellant. So if you're ready to proceed, I would ask that the attorney for the appellant, please present your argument. Yes, may it please the court. I'm Mary McNulty representing the appellant, American Aviation Supply. This case involves an exemption to the Illinois Retailer's Occupation Tax, also known as the ROT, which is Illinois' equivalent of a sales tax. Appellant asks this court to apply the plain language of the statutory tax exemption that's called the Expanded Temporary Storage Exemption. Americans' fuel sales to the airlines satisfy the plain language of the statutory exemption. Therefore, the tax tribunal's decision should be reversed, and summary judgment should be granted in favor of appellant. Now, you've seen many references in the party's briefs to the United case, and you'll hear much more about it today. But American is not here to re-litigate United and wouldn't be here today if the exemption at issue were the same as in United. It is not. In fact, United was decided 30 years before the exemption at issue in this case was even enacted. The United case was decided in 1971, and the exemption at issue here was enacted in 2001. United involved a different tax, a different exemption, and a discretionary rule that had been revoked. Therefore, Appley is flat wrong when it says that United interpreted the same exemption that is at issue in this case. American's case involves a ROT, which is different from the use tax at issue in United. American's case involves the expanded temporary storage exemption, which has three material statutory differences from the exemption that was at issue in United. And American's case involves a legislative regulation that carries the weight of a statute. It does not involve a discretionary rule that had been revoked as in United. I'll summarize the facts of this case very briefly. American Airlines and U.S. Air purchased fuel in Illinois from American Aviation Supply. The airlines temporarily stored the fuel in tanks at O'Hare Airport, loaded the fuel into their airplanes, and consumed 2% of the fuel in Illinois and 98% of the fuel outside of Illinois. This case is about the 98%, not the 2%. With the court's permission, I'll pull up a visual from our reply brief, which is on pages two and five of our reply brief, to walk through the three material differences between the two exemptions, which are consumption, purpose, and thereafter. Counsel, before you go into your exhibit, what's our standard of review? It's de novo, your honor. And what deference should we accord, if any, to the department's interpretation of section 2-538 of the ROTA? The department's current interpretation is simply its litigating position and should be accorded no deference. However, its contemporaneous interpretation that was set forth in the permitting regulation and in the administrative guidance that was issued at the time is entitled to deference. In fact, the permitting regulation is a legislative regulation and has the force and effect of law. Well, did the department deny your request for a refund of tax? Yes, it did. Well, then it must have interpreted the statute not in accordance with what your interpretation is. That was not in 2002 when the permitting regulation was issued and the administrative guidance that American relied on was issued. But it was the interpretation at the time that the department refused your request for a rebate of tax pay. That's correct. That was a few years ago. So that is a department determination of the meaning of its own regulation and the department's interpretation of the meaning of the statute, is it not? 20 years after the statute was enacted and after the permitting regulation was acted and after the certificate and the information bulletin were published. But it is a determination of the department as to the meaning. It's a determination, but that doesn't change the standard of review in this case. It's still a de novo review. There's no question it's a de novo review, but in a de novo review, do we have to accord some deference to the department's interpretation of the regulation of the statute? Your Honor, I will continue to state that that's a litigation position and not the contemporaneous interpretation at the time that the expanded temporary storage exemption was enacted. Okay, go ahead. Okay, I'm not sure if this is going to allow me to share my, you know, the screen sharing has been disabled, but if you would look at pages, either pages two or five of our reply brief, that's the visual that I was ready to share with this court. Okay, it shows three material differences between the expanded temporary storage exemption and the exemption at issue in this case. First, the expanded temporary storage exemption as the word consumption. This addition is critical for consumable property like fuel. Under the expanded temporary storage exemption, consumption is what must occur solely outside of Illinois, and consumption is something separate and different from use. In United, any post-storage use in Illinois destroyed the exemption. Therefore, withdrawing the fuel from storage, loading the fuel onto the planes at O'Hare airport and transporting the fuel in Illinois all destroyed the exemption. But after United... Excuse me for a minute. Use and consumption are separated by the word or, aren't they? They are. Okay, go ahead. So, after United, the legislature added consumption, which means that the post-storage uses in United no longer destroy the, or they do not destroy the expanded temporary storage exemption. And your honors, this is a key difference from United. We've debated among ourselves whether the addition of consumption alone can be dispositive in this case, because the expanded temporary storage exemption allows the fuel to be consumed solely outside of Illinois, even if it's used in Illinois before leaving the state. But this court doesn't need to decide if the addition of consumption alone results in a different outcome than United, because the expanded temporary storage exemption has two other important statutory differences, plus the permitting regulation. So, the second addition in the statute is the Purpose Clause. The Purpose Clause identifies a property that is subject to the Soli test. It asks why the fuel was temporarily stored in Illinois and why it is being transported outside of Illinois. If the answer is that the fuel will be consumed solely outside of Illinois, the fuel qualifies for the exemption. So, the airlines temporarily stored 98% of the fuel that they purchased from an American for the purpose of transporting and consuming all of that fuel outside of Illinois. That 98% is a fuel that's subject to the Soli test. The United exemption had no Purpose Clause, so 100% of the fuel that was temporarily stored in Illinois had to be used solely outside of Illinois. The third difference between the two exemptions is the addition of the word thereafter. Thereafter is important because it tells you when the Soli test is applied, and that's after the fuel is transported outside of Illinois. Consequently, the expanded temporary storage exemption expressly allows some of the fuel to be consumed in Illinois without destroying the exemption for the fuel that's transported outside of Illinois, the 98%. The United exemption imposed the Soli requirement after storage and not after transportation. Was the fuel intended for consumption outside the state of Illinois stored separately from the fuel that was to be consumed in Illinois? No, it was not, Your Honor, and that is the truck example, the department's truck example, that comes from United. But, I mean, if American had reconfigured its planes to isolate the 98% and transport it outside of Illinois, there'd be no dispute in this case that that fuel would be exempt. Well, your opponent is going to argue that if you stored the fuel in gross, and then put 2% of it, or a portion of it, in your planes for consumption in Illinois, but truck the remainder out to, let's say, Wisconsin, and it was loaded in planes at the airport in Wisconsin, then you would be entitled to the exemption. But they say you stored it in gross, loaded it in planes in Illinois, and used a portion of it, and that then raises the issue of what does Soli mean? Right, well, Soli, you test Soli after the fuel is transported outside of Illinois, and at that point, all of the fuel is consumed outside of Illinois. And you also need to look at purpose, and that identifies the fuel that's to be tested under the Soli test, and the fuel that was acquired for the purpose of transporting it out and consuming it outside of Illinois is consumed solely outside of Illinois. I mean, under United, the fuel had to be transported outside of Illinois, other than by placing it in the equipment that would consume it, but that's because under the exemption at issue in United, there was no consumption alternative. But here, we test consumption after the fuel is transported outside of Illinois, and the other uses in Illinois that destroy the United exemption do not destroy the United. Didn't it define transport as something different than putting it in the fuel, whatever, fuel tank of the airplanes? But they said that it had to be transported outside of Illinois by other than the airplane, they did say that, but again, that exemption does not have the word consumption in it. So the relevant, you have the same meaning. Actually, transportation is not even used in United, it's not in the statute, but we don't dispute that transportation, of course, it has to be transported outside of the state before it can be used or consumed outside of the state. But here, again, we test, we look at the Soli test is outside of Illinois. The percentage approach that American applied is allowed by the permitting regulation, and the permitting regulation was adopted. It's a legislative regulation, so as a force of law, and the permitting regulation expressly allowed the taxpayer to designate the percentage of purchases that qualifies for the exemption. It says if a permit holder knows that a certain percentage of his purchasers will qualify, it may provide a certificate stating that a designated percentage of purchases qualify. In fact, the form that was issued in 2002, specifically, it includes a blank and a instructions explained that a purchaser can specify that a percentage will be stored temporarily in Illinois before transfer to an out-of-state location for use or consumption solely outside the state. And again, the instructions themselves, they say store temporarily in Illinois before transfer. And then you look at after the transfer, what happens if it's consumed solely outside of the state. So, the airlines designated that 98% is exempt because they knew when they purchased the fuel that that percentage would be what would be consumed solely outside of Illinois. Your Honor, you've got to give the court, we respectfully ask that this court give meaning to the different words in the statute. If the legislature had intended the two exemptions to apply identically, they could have easily chosen the same words, but they chose to use different words, which means that the two statutes have different, the two exemptions are not the same and have different results. Can the statute refer to consumption and use be interpreted as different types of property? Some property is consumed and some property is used and it's separated by the word or. Now, if one interprets consumption to mean something that is actually consumed, like food, and the use can be interpreted to mean property that is actually used, um, doesn't that give meaning to the department's interpretation? You used the fuel partially in Illinois, and your opponent is going to say that renders this case akin to United. But Your Honor, there was no consumption in United, so I mean the statutes are different. Well, I understand there's no consumption in United, but consumption and use are separated by an or. That means they're interpreted separately. It's not an and. But if the same result had been intended, why, there would be no need to add the word consumption, because United would have already decided that situation. But in the event that the statute is unambiguous, if we determine it's unambiguous, then in that particular case, wouldn't United control the question of use within the state, solely within the state? Your Honor, there would have been no reason for the legislature to add the word consumption if United decided the issue. Okay, go ahead. So Hartney Fuel is instructive of this court's analysis, and that case involved the interpretation of a statute that was enacted after case law interpreted near identical language in another statute, and the legislature was presumed to embrace the case law interpretation of the first statute. Because the second statute was nearly identical to the first statute, the court interpreted the second statute in the same way that the case law had interpreted the first statute. Here, as I've gone through, the exemptions do not use nearly identical language, and United's interpretation cannot control the interpretation here. The use of different language means that the legislature intended different results, and in addition, every word in the statute has meaning, so the material statutory differences cannot be ignored. This case is like three Illinois Supreme Court cases, Julie Key, Illinois State Treasurer, and Sylvester. In Julie Key, the court held that different definitions of the same term under two different acts meant that the legislature intended different results. In Illinois State Treasurer, the court held that the legislature intended different results when specific language was included in one provision in an act, but not in another provision of the same act. And in Sylvester, the court held that a statutory provision cannot be interpreted in a way that would be inconsistent with other language in the same provision, or render language in the same provision superfluous. This case is not like Bess v. Edwards, which Chapellee cites. There, the court did acknowledge that different terms usually require different meanings, but stated that the simple reordering of words would not be different language. The exemption here did not simply reorder the terms that were used in the United Exemption, but instead added words that were not in that exemption. Is there a difference between consumption and use of the two words? There is for consumable property. All right, so the legislature could easily have added the word consumption to make clear that the property that is the subject of the exemption is consumed as opposed to used. And it brought consumables within the purview of the statute, did it not? But that would have already been the result under United, so there was no reason to add the word consumption unless it meant something different. If consumption is different than use, then the statute that was interpreted in United 1 didn't deal with consumables, only property that was used. Your Honor, United dealt with fuel, which is a consumable, just like this case. Well, fuel is used also. And it's consumed, so consumption is something different from use. Would the storage of property, or pardon me, of food, have been covered by United? You don't use food, you consume it. So, United wouldn't have covered the storage of food, temporarily stored for transportation, to be used solely outside of the state of Illinois. Oh, that's not clear. I mean, the department issued rulings for other types of property that it did apply this exact sort of, this exact type of unit approach. They've applied it. It was discretionary under the temporary storage exemption, but they did exactly that in a number of rulings. So, the only different type of property that's treated differently, the only property that's treated differently is consumable property like fuel. Other property has been treated on this per unit basis, where the court looks at it unit by unit. In fact, shared imaging is a case under the temporary storage exemption, where the court looked at it on a unit by unit basis, and that involves something different. It was not a consumable property like fuel. Okay, go ahead. If you want to sum up, counsel, because your time is almost up. Okay, Your Honor. I just wanted to mention that we believe the permanent regulation and administrative guidance are consistent with the statute. However, if you find them invalid, the tax should still be abated under the Taxpayer Bill of Rights, because the taxpayer relied on those authorities. But in summary, American's fuel sales to the airline satisfy the plain language of the statutory exemption. The airlines acquired fuel in Illinois and temporarily stored 98% of that fuel in Illinois for the purpose of transporting it and consuming it solely outside of Illinois. The airlines designated the 98% as exempt, as expressly allowed by the permitting regulation, which is a legislative regulation that has the same force of law as a statute. United was decided 30 years before the exemption at issue in this case. Therefore, it cannot control the outcome of this case. It interpreted a different tax, a different exemption, and a discretionary burn-off rule that had been revoked. The material statutory differences between the two exemptions must be given meaning. As I just mentioned, the permitting regulation and administrative guidance are consistent with the statute. However, if you find them invalid, the tax should still be abated under the Taxpayer Bill of Rights, because the taxpayer relied on them. For all these reasons, the Tax Tribunal's decision should be reversed, and summary judgment should be granted in favor of appellant. Thank you very much, Counsel. Counsel for the Appellee Department. Good afternoon. May it please the Court, Assistant Attorney General Bridget D. Batista, on behalf of the Illinois Department of Revenue. Your Honors, over 50 years ago in United, the Illinois Supreme Court rejected application of the burn-off rule and upheld the Department's interpretation that temporary storage ends and a taxable use occurs when fuel is withdrawn from storage for placement in the tanks of the aircraft. Importantly, the Court looked to the purpose of storage by the airline and held that fuel was not stored at O'Hare for mere safekeeping until later used solely out of state, but rather it was stored there to facilitate airline operations out of the airport. In its briefing, American does not identify any material factual differences from United nor any substantive differences in the expanded exemption at issue here. Nevertheless, American asks this Court to reinstate the burn-off rule for purposes of refund claims. And, as part of that holding, ask this Court to recognize an airplane fuel tank as a means of transportation when United acknowledged that the Department's interpretation rejected that means and upheld that interpretation. Because the holding American seeks here would contravene United, this Court should deny this request and affirm the Tribunal's to distinguish the expanded exemption from the temporary storage exemption. Those attempts fail. As a threshold matter, there must be a clear indication of a contrary intention by the General Assembly to depart from settled law. The differences identified by American do not demonstrate any such clear indication to reinstate the burn-off rule. They first point to the phrase use or consumption, as stated in the expanded exemption. As an initial matter, this argument has been forfeited. It was raised in the motion for summary judgment before the Tribunal and was not renewed in the opening brief before this Court. Counsel today stated that whether this issue is dispositive had been debated among ourselves. That, I think, is evident from this statement. I take it you agree that our review is de novo? Yes, Your Honor. Is that true? Yes. If our review is de novo and we're construing a statute, does it really make any difference what argument your opponent is making as to the construction? I think so. We have to determine its meaning, don't we? Yes, Your Honor. Your Honor's question goes to forfeiture in particular? No, it doesn't. You say that the argument is not available to your opponent because they didn't raise it in their opening brief. Whether they raised it or they didn't raise it in their opening brief, aren't we charged with the responsibility of determining what that means? What the statute means? Yes, Your Honor, but the Department also is entitled to an ability to respond to that argument. If this Court were to view this argument that was not raised in the opening brief as a basis for reversal, the Department would request supplemental briefing on this question because we were denied that opportunity as it was not raised. Well, you're not going to get supplemental briefing, number one. Number two, when we determine the meaning of this statute, we have to determine it based on all the terms used, not just one term in isolation, ignoring another because your opponent didn't raise it. I think Rule 341 applies also to legal arguments, Your Honor. That is our point on that, that this was not raised in the opening brief. But even if the Court was to consider this argument, the Court need look no further than the Retailer's Occupation Tax Act, which defines the sale at retail. So the sales, what is taxable to include transfer of the ownership or title of tangible property to a purchaser for the purpose of use or consumption for valuable consideration. So that phrase, use or consumption, is used in the Retailer's Occupation Tax Act to define what is taxable under the Act. The construction that American is advocating for is a broad construction. They're seeking to allow for the exemption for temporary storage to apply despite use to which they put the fuel. They don't appear to argue in their reply brief that withdrawal from storage and placement into the tanks is use of that fuel. But what they're saying is, well, we can still qualify for the we solely consume or burn off 98% of it out of state. That is a broad construction, and this Court should reject a broad construction when we look at exemptions. We need to construe it narrowly. And in addition, when we look to questions, even if this is a debatable question, Illinois law also instructs that we resolve in terms of tax exemptions debatable questions in favor of taxation. And even if a literal use of the word or supports their interpretation, which we do not concede that it does, there is case law that says that literal reading will yield in the event of an unreasonable interpretation. And that is certainly what would be occurring here. Because again, you would be allowing American to use the fuel by taking it out of storage and placing it into the tanks of their aircraft, which is a use as recognized by United, but nevertheless continue to qualify for the exemption simply because the fuel part of it is ultimately consumed out of state. The Court should reject that request. Also, in terms of the use of the word thereafter in the brief of American, they argue that there is a time to test, a timing requirement, but this appears nowhere on the face of the exemption. Also, again, this would be a broad reading of the statute. They're saying it appears to ignore the uses to which the fuel is prior to transportation. There is no reason that the General Assembly would have excused the use of the fuel. As United has recognized, it's using the fuel to take it out of storage and place it into aircraft tanks to allow the exemption to continue to apply and to ignore those uses prior to transportation. They also- What deference in a de novo review are we required to give, if any, to the department's or the tribunal's interpretation of both the statute and the regulation? Your Honor, as we cite in Hadley, the department's interpretation and agency's interpretation is owed deference because they are the agency charged with administration of the statute. So, there is a long recognized deference to agency interpretations where it's one that has been the law in this state since United was decided that use of the fuel occurs when it's taken out of storage and placed into the aircraft tank. So, certainly, yes, Your Honor. In the event of two competing reasonable interpretations, even if American's interpretation is reasonable, which the department does not concede because of United, but even if this court viewed it as a reasonable interpretation, this court ought to defer to the litigation position of the department is inconsistent with the fact that this is the way that the department has been viewing this fuel usage since the 1960s. You say in the face of two reasonable interpretations, we ought to favor the department's interpretation, but is that really what Hadley said? Didn't Hadley say that we will not substitute our interpretation for that of the agency if the agency's interpretation is reasonable? Yes, Your Honor. I do not dispute that's the correct quotation. I think they said it on page 371, by the way, in their opinion. Okay. And here, there's no basis that American has shown for the court to substitute reasonable interpretation of the department here, which is that the fuel is used when it's taken out of storage and placed into the tank. They also mentioned a purpose. Some of your arguments seem to indicate that you think that the statute is ambiguous. No, Your Honor, we do not believe the statute is ambiguous. It is consistent with United that use of the fuel, as explained by that court, the Illinois Supreme Court, that the fuel is used when it is withdrawn from storage for placement in the aircraft tank. That is a use of the fuel, and that is the same at issue here, that this fuel has been used when it's taken out of storage. That measure of the tax, what is the entire 100 percent of the fuel placed into the tank, tax is owed on that fuel. Can I ask another question? Assuming, as you say, that the statute is not ambiguous, then tell us why you think that American's interpretation is not a reasonable one. Well, Your Honor, the two main statutory differences that they identify would broaden the exemption. So again, this time to test, they're asking, I believe, for the court to ignore the use to which the fuel is put prior to its transportation out of the state. That is a broadening of the exemption. That is not reasonable. That is contrary to how we are to construe exemptions. And two, with use or consumption, they're asking for the court or interpretation that ignores the use to which it's put and looks solely at the fact that fuel is consumed. And as a general matter, is use. That's why there is this exemption, because they're recognizing the General Assembly that it can be exempt. So certainly fuel can be used and consumed. And it certainly was used here as in accordance with United when it's taken out of storage and placed into the tanks of the aircraft. But what's important here too is there's these arguments they're making about the purported differences between the two statutes. But what the real difference is, if you look to the comparison, is that the expanded exemption applies to in-state retailers. That is the purpose when you look to the two exemptions and comparing them. The expanded exemption applies to in-state retailers, whereas the temporary storage notes when property is acquired outside of Illinois. That is the key difference. And if that were even ambiguous, when we do not think it is, but if the court were to view it ambiguous, it can go to the legislative history, which we cite in our brief, which shows that the purpose for this language, or excuse me, expanded exemption, was not to reinstate the burn-off rule, but rather to allow for the expanded exemption, the temporary storage exemption, to be expanded and apply to Illinois retailers. So that is the difference based on the comparison of the two statutes and based on the legislative history. And importantly, you know, with regard to this notion that the state has in mind, these tax acts, the Use Tax Act and the Retailer's Occupation Tax Act, apply broadly to taxpayers. It is not an aviation fuel exemption. It is with respect to all taxpayers. And so the notion that these differences, these syntactical differences that are pointed out by American were in mind to reinstate the burn-off rule, is not demonstrated on the face of this The regulation is completely consistent with the statute. The statute, the regulation rather, allows for a taxpayer, a purchaser, to identify a percentage of purchases that qualify for the temporary storage exemption. That does not mean that suddenly fuel that has not been temporarily stored, the 98 percent, suddenly qualifies for the exemption. It is settled law that it does not. So they cannot then, through this regulation claim, they are suddenly eligible simply because there's an acknowledgement that, yes, some of your purchases, American Airlines, can qualify for temporary storage. But under United, the fuel that you take out of storage and place into your fuel tanks, that is not a percentage that qualifies. And nothing in the regulation is inconsistent with that reading. And for that reason, the Taxpayer Bill of Rights Act similarly does not allow abatement here. There's no read consistently with the statute. Just briefly on the constitutional issue, this court should not reach that, of course, if it can resolve the question on the statutory interpretation issue. But it would be a violative of the Dormant Commerce Clause here to read the statute in the way that American is advocating for here because it would mean that the expanded exemption discriminated in favor of in-state retailers whose customers would not owe tax on fuel burned off out of state, where out-of-state retailers' customers would. And I just want to know- What did the U.S. Supreme Court say about that when United 1 went up? I think that was not an issue because the issue here is the comparison of these two statutes, the constitutionality in comparing these and applying them differently. So that was not an issue in the U.S. Supreme Court. So they were determining the constitutionality of the temporary storage exemption in isolation, not as compared to how it would apply versus the expanded temporary storage exemption, which is a distinct question here. And the point is that the in-state retailers would have a commercial advantage because their customers would not be subject to that tax where the out-of-state retailers would. And I want to just make a brief note of a correction on our brief. On page 36, we indicate that the out-of-state retailer would be required to collect the tax. There's not a requirement that they collect the tax, Your Honor. We're happy to formally correct that in a brief if necessary. But the substantive point remains, and it's a court request, but the substantive point remains that there would be an economic advantage to in-state retailers here. So this court should not adopt that interpretation. And two final points, Your Honor. The argument that America is making would be such that no tax would be owed anywhere on this 98%. And that is because the U.S. Supreme Court recognized that, for instance, if the plane flies over Indiana, Indiana is not subjecting American to tax for the fuel burnt off out-of-state. So it was entirely consistent and fair in the U.S. Supreme Court view to tax all of the fuel that is used in the state when it's taken out of storage and placed into the storage tanks. Also, in terms of fairness, the court there also recognized it was entirely fair for that full amount of the fuel to be taxed, given that the taxpayer is benefiting from the state of Illinois, from the infrastructure here, when it utilizes that fuel in facilitating its operations out of the airport. And that is the key. The purpose argument that there's today, my opposing counsel brought up the purpose clause. I don't know that that was a discrete argument raised in opening brief. But regardless, purpose was looked at both in United and it is in the very language here. What is the purpose for which you are storing this fuel? And United answers that question clearly, which is it was not stored here for the purpose of mere safekeeping, but purpose was to facilitate your operations out of state. And that is why taking the fuel out of storage and transporting it, and it doesn't need to be by truck. In the reply brief, they home in on our use of the word truck, but it can be by other means, including if an airplane took the storage containers out of state for use there. The distinction is once it's placed in the tank, once it's placed in the machinery that's going to consume it, that is using it, that is using it to facilitate your operation, and that is subject to tax. Regardless, if a portion of it is ultimately consumed out of state, you have used all of it when you withdraw it and place it into your tank. My second point, on deference, Your Honor mentioned the deference that is owed to the reasonable construction. And again, we do not concede that that is even a necessary inquiry here because the department's is the only reasonable interpretation given United. But even in the event of two, there's no reason for the court to substitute its judgment for this reasonable interpretation of the department. And further to deference is the tribunal. Horsehead, which is the Illinois Supreme Court case, instructs even on questions of law, the tribunal's expertise is relevant here. And the tribunal went through the analysis of United and adhered to it correctly here that this should be taxed, this is subject to tax under the provisions of United. Thank you, counsel. Does anyone have any questions at this time? And just briefly, we would ask that the court affirm the tribunal's decision. Thank you. Thank you. And reply, counsel? Yes. United did look at the purpose of the of the fuel. But again, consumption was not in the temporary storage exemption. So they didn't look at whether the purpose was to consume the fuel solely outside of Illinois. Consumption we maintain is critical to this case. We did actually raise consumption in our opening brief on pages 1113 and 18 through 19. But I also note that the tax tribunal agreed with us on consumption. And on page nine specifically said that consumption has a different meaning than the term use. So that's one reason why we didn't speak even more about respondent as aptly recognizes, we certainly discuss it at length in our reply brief. And of course, this is a de novo review, as you said, Justice Hoffman, so the court can look at our arguments and should look at our arguments, all of our arguments. Or your honor, you asked whether there's a difference between use and consumption or and what the use of the word or means or means that use in Illinois doesn't destroy the exemption. And the use that was decided in United was where that was key was loading the fuel into the plane. It wasn't whether the fuel was consumed outside of whether the fuel was consumed that wasn't addressed in United. Again, because the statute didn't use the word consumption. Well, let me let me inquire, because the word or is used. If you eliminate the word consumption, then this clearly is on all fours with United. But because of the word use, if consumption means something different than use, and it's separated by or then either consumption or use is the meaning of the statute. And there's no question that under United, you used it when you put it in the plane. The statute is looking at what did you do after the fuel was transported outside of Illinois, and there was consumed solely outside of Illinois. Your honor, there's nothing in the legislative history that says that the that says anything about the burnout rule. The legislative history is irrelevant because the statute's unambiguous. But if the statute is ambiguous, the legislative history simply states one lone senator's comment about the statute. There is no unanimous statement of legislative senator thinks the statute means cannot be given weight by this court. The statute says what it says it should be interpreted accordingly. As far as deference, you know, the post hoc self and post hoc position that's taken by the department should not be given any deference. Even if it's at the time of the refund claim, it's still a post hoc interpretation of the exemption and something different from the permitting regulation and more importantly, really, the administrative guidance that was issued at the same time in 2002. As far as constitutionality, your honor, the department ignores the provision of the use tax, which specifically says that the use tax does not apply if a seller would not be taxable under the rot. And so there is no economic distortion in this case because in state and out of state purchases would be treated the same. The Weber case that we discussed in our brief makes this point clear. There are taxpayer brought it on an airplane outside of Illinois and brought it into Illinois to determine if the taxpayer had to pay the use tax. The court examined the rot exemptions because none of the exemptions applied. The taxpayer had to pay the use tax. But if an exemption had applied to the end state sale, the use tax would not have applied. So again, the two in state and out of state purchases are treated the same. As far as Appley's correction to their brief, I mean, we agree with the correction itself. Out of state retailers would not have been responsible for the tax. Retailers are only subject to the rot. They're subject to tax under the rot and that's only for in state sales. But we do completely disagree with Appley's further statement that the customer would have used tax. The use tax again would not be owed because the seller would not have owed the tax under the rot had the sale occurred in Illinois. And that's specifically under 35 ILCS 105.3-65. As you mentioned, Your Honor, in United, the Supreme Court held that the burn off rule was constitutional. The constitutionality in this case is whether in state purchases would be treated better than out of state purchases, and they would not. But the burn off rule that was addressed in United, the fairness point, the U.S. Supreme Court said the burn off rule was constitutional. So if 2% of the fuel had been taxed in Illinois, the other 98% had not, the U.S. Supreme Court was certainly fine with that. And so the same rationale would apply to the rot exemption. The fuel could be sold only once and the tax would be measured based on consumption in Illinois. So the U.S. Supreme Court's reasoning in United applies in this case as well. In what year did the department issue its regulation? In January of 2002. Okay. Any other questions for counsel? For me. Thank you both. And the case will be taken under advisement. Thank you, Your Honors.